```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
DAVID VALENTIN,                      :  09 Civ. 9448 (GBD) (JCF)
                                     :
            Plaintiff,               :     MEMORANDUM
                                     :     AND  ORDER
     - against -                     :
                                     :
THE BANK OF NEW YORK MELLON CORP.,   :
THE BANK OF NEW YORK,                :
THE BANK OF NEW YORK COMPANY, INC.,  :
THE BANK OF NEW YORK MELLON, and     :
John Doe Corporations "1" through    :
"5,"                                 :
            Defendants.              :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This is an employment discrimination action brought by David Valentin against his former employer, The Bank of New York Mellon ("BNYM"). BNYM has submitted a letter application seeking an order requiring the plaintiff to return documents that were inadvertently produced. BNYM's application is granted.

Background

The plaintiff commenced this action on November 13, 2009. Pursuant to a joint discovery plan, on August 9, 2010, BNYM first responded to the plaintiff's document demands, producing some 130 pages. (Letter of Matthew J. Walters dated March 21, 2011 ("Walters 3/21/11 Letter") at 3, 4). BNYM subsequently supplemented its production, ultimately disclosing a total of 172 documents. (Letter of Stephanie Wilson dated March 14, 2011

1

("Wilson 3/14/11 Letter") at 3).  The initial production contained two pages, labeled BNYM_VAL 087 and 088 (the "at-issue documents" or "at-issue notes"), which BNYM now contends were inadvertently disclosed and are protected from discovery by the attorney-client privilege and the work product doctrine.  (Wilson 3/14/11 Letter at 1).  These pages consist of handwritten notes concerning the termination of the plaintiff's former supervisor and alleged harasser, Karen McDermott.  (Letter of Matthew J. Walters dated Jan. 3, 2011 ("Walters 1/3/11 Letter"), Exh. 2; Letter of Matthew J. Walters dated Feb. 1, 2011 ("Walters 2/1/11 Letter"), Exh. 2; Wilson 3/14/11 Letter, Exh. A).

On January 3, 2011, plaintiff's counsel wrote to the Court to request that BNYM be required to produce all documents relating to Ms. McDermott's separation, and he attached a copy of one page of the at-issue notes.  (Walters 1/3/11 Letter at 8-10 & Exh. 2). Then, on February 1, 2011, plaintiff's counsel submitted the same document, this time in support of the argument that additional documents concerning Ms. McDermott's termination must exist and that BNYM had failed to produce them.  (Walters 2/1/11 Letter at 1-2 & Exh. 2).  In responding to the February 1 letter, BNYM's counsel argued that "it is perplexing why Defendants would have produced this document in the first place if they were attempting to hide information from Plaintiff."  (Letter of Stephanie Wilson

dated Feb. 3, 2011 ("Wilson 2/3/11 Letter") at 2).  However, their attention now focused on the at-issue documents, BNYM's counsel conferred with BNYM's human resources department to try to identify the author of the notes.  (Letter of Stephanie Wilson dated March 29, 2011 ("Wilson 3/29/11 Letter") at 2).  They were unable to make a definitive identification prior to a conference with the Court on February 15, 2011, at which time the at-issue notes were discussed in connection with the plaintiff's demand for similar documents.  (Wilson 3/14/11 Letter at 2; Wilson 3/29/11 Letter at 2).  On February 18, 2011, BNYM determined that the handwriting on the notes was that of its former in-house counsel.  (Wilson 3/29/11 Letter at 2).  BNYM was unable to make contact with its former counsel at that time, but by February 22, 2011, it had confirmed that the notes were created after Mr. Valentin had served a demand letter and initiated a proceeding with the Equal Employment Opportunity Commission.  (Wilson 3/29/11 Letter at 2).  BNYM concluded that the notes were privileged and protected by the work product doctrine and, on February 28, 2011, demanded their return.  (Wilson 3/14/11 Letter at 3 & Exh. B; Wilson 3/29/11 Letter at 2).  When plaintiff's counsel declined to comply, BNYM submitted the instant application.

Discussion

The treatment of inadvertently produced information is now

3

governed by Rule 502 of the Federal Rules of Evidence.  <u>See</u> <u>Clarke</u>
<u>v. J.P. Morgan Chase & Co.</u>, No. 08 Civ. 2400, 2009 WL 970940, at *5
(S.D.N.Y. April 10, 2009).  That rule provides that neither the
attorney-client privilege nor work product immunity is waived by
the disclosure of documents containing protected information if
"(1) the disclosure is inadvertent; (2) the holder of the privilege
or protection took reasonable steps to prevent disclosure; and (3)
the holder promptly took reasonable steps to rectify the
error . . . ."  Fed. R. Evid. 502(b).  Finding a waiver is a fact-
sensitive determination dependent on factors "that vary from case
to case."  Fed. R. Evid. 502 advisory committee's note.  In this
case, all three criteria are met.

    A.  <u>Inadvertence</u>

    "The first inquiry under Rule 502(b) -- whether disclosure was
inadvertent -- is a simple one: did the disclosure occur by mistake
or unintentionally?"  <u>Datel Holdings Ltd. v. Microsoft Corp.</u>, No.
C-09-05535, 2011 WL 866993, at *3 (N.D. Cal. March 11, 2011).
Disclosure is unintentional even if a document is deliberately
produced, where the producing party fails to recognize its
privileged nature at the time of production.  Thus, in <u>Datel</u>
<u>Holdings</u>, the court held disclosure to be inadvertent where a party
produced documents, reviewed them prior to a deposition, and then
permitted them to be marked as exhibits at the deposition, all

4

before realizing that the documents were privileged.  Id. at *1-3;
see also Employers Insurance Co. of Wausau v. Skinner, No. 07 CV
735, 2008 WL 4283346, at *9 (E.D.N.Y. Sept. 17, 2008) (finding
privilege not waived although document allowed to be marked as
exhibit at deposition).

Similarly, in this case, the production of the at-issue
documents was a mistake.  To be sure, BNYM's counsel have
characterized the protected nature of the at-issue documents as
"readily apparent" (Wilson 3/14/11 Letter at 2), but that is the
case only if the reader understands the context of the documents:
when they were created and by whom.  Since BNYM's counsel did not
acquire that information until after the production, the disclosure
was inadvertent.

B. Steps to Prevent Disclosure

In order to determine whether documents relevant to Mr.
Valentin's case should be withheld on grounds of privilege, BNYM
undertook a traditional document-by-document review.  First,
documents were identified as potentially responsive to the
plaintiff's requests.  Then, counsel examined each such document
and segregated those believed to contain privileged material.
Finally, the privileged documents were identified in a log while
the non-privileged ones were provided to plaintiff's counsel.
(Wilson 3/14/11 Letter at 2).  The breakdown here apparently

occurred because, although "the at-issue notes were segregated originally into a working file for BNYM's former in-house counsel" (Wilson 3/29/11 Letter at 3), they were subsequently mixed in with other handwritten notes prepared by the BNYM human resources staff and produced to plaintiff's counsel. (Wilson 3/14/11 Letter at 3).

While the methodology employed by BNYM might not be sufficient in a case where there is a large volume of data, including electronically stored information, that protocol was fully adequate in this instance. Cf. Fed. R. Evid. 502 advisory committee's note ("Depending on the circumstances, a party that uses advanced analytical software applications and linguistic tools . . . may be found to have taken 'reasonable steps' to prevent inadvertent disclosure"). In light of the small total number of documents, it was appropriate to utilize a simple visual review for privilege. See Heriot v. Byrne, 257 F.R.D. 645, 661 (N.D. Ill. 2009). Certainly, it would have been better to flag for further review ambiguous documents, such as the at-issue notes, that do not include on their face an indication of the author or of who might have received or had access them. However, the steps taken to preserve privilege need not be perfect; they must only be reasonable.

The plaintiff nevertheless contends that because the universe of documents produced was relatively small, the disclosure of even

a few privileged documents demonstrates that BNYM failed to take adequate precautions. (Walters 3/21/11 Letter at 4-6). But the inadvertently produced documents constituted only about 1.5 percent of the 130 documents initially disclosed. More importantly, a "percentage" analysis becomes less meaningful as the total number of documents diminishes. A single document will be half the production if only two documents are disclosed, but its production may still have occurred despite reasonable review procedures.

    C. <u>Steps to Rectify the Error</u>

Finally, the plaintiff argues that the lapse of time before BNYM sought return of the at-issue documents constitutes a forfeiture of any privilege. (Walters 3/21/11 Letter at 2-4). The plaintiff argues that the delay should be measured from the date of production in August 2010 or, at the very least, from the dates on which BNYM itself proffered the at-issue notes to the Court in connection with discovery disputes. (Walters 3/21/11 Letter at 3). However, "[a]lthough inordinate delay in claiming the privilege may result in a waiver, the length of delay in claiming the privilege should be measured from the time the producing party learns of the disclosure, not from the time of the disclosure itself." <u>United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co.</u>, Nos. 97 Civ. 6124, 98 Civ. 3099, 2000 WL 744369, at *6 (S.D.N.Y. June 8, 2000). Here, BNYM had cause to be concerned only when it learned

on February 18, 2011 that the handwriting was that of the former in-house counsel.  And, it only fully understood the privileged nature of the notes four days later when it verified when the plaintiff had first asserted his legal claims.  BNYM sought return of the documents six days after that.  This sequence does not reflect an undue delay and does not warrant forfeiture of the privilege.

Conclusion

For the reasons set forth above, BNYM's application is granted; the plaintiff shall return the at-issue documents and may not rely on them in this litigation.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 14, 2011

Copies mailed this date:
Jonathan N. Pazer, Esq.
Matthew J. Walters, Esq.
Pazer, Epstein & Jaffe, PC
20 Vesey Street, Suite 700
New York, New York 10007

David A. Kochman, Esq.
Gail M. Eckstein, Esq.
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

Stephanie Wilson, Esq.
E. David Krulewiez, Esq.
Reed Smith LLP
136 Main Street
Princeton, NJ 08540

John C. Unkovie, Esq.
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222